Glendale SMITH

v.

John AMBROGIO et al.

Civ. No. N–76–247.

United States District Court,
D. Connecticut.

Sept. 22, 1978.

John R. Williams, New Haven, Conn., for plaintiff.

Donald G. Walsh, New Haven, Conn., for defendants.

## RULING ON MOTION TO RECONSIDER DISMISSAL OF CLAIM AGAINST TOWN OF HAMDEN

NEWMAN, District Judge.

This motion presents the issue of what allegations are sufficient to state a claim of municipal liability for deprivation of constitutional rights in the aftermath of the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and the Second Circuit's decision in *Turpin v. Mailet*, 579 F.2d 152 (2d Cir. 1978).

Plaintiff filed his complaint on July 14, 1976. Invoking jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 (3), he alleged claims against two police officers of the Town of Hamden, the acting chief of police, and the Town. On motion of the Town to dismiss, this Court granted the motion ruling that § 1343 (3) did not supply jurisdiction for suit against the Town under 42 U.S.C. § 1983 and that, while § 1331 supplied jurisdiction for an implied cause of action against the Town founded on the Fourteenth Amendment, the complaint did not sufficiently plead a claim on which relief against the Town could be granted. Ruling on Motions to Dismiss (May 16, 1977). Entry of judgment under Fed.R. Civ.P. 54 (b) was not ordered, since judgment had been entered in favor of the Town of West Haven in *Turpin*, and appeal of that decision seemed likely to provide sufficient guidance for pending cases such as this one.

After the decisions in *Monell* and *Turpin*, plaintiff moved for reconsideration of the dismissal of the claim against the Town. Since no valid judgment had been entered,[1] that dismissal is "subject to revision at any time," Fed.R.Civ.P. 54 (b), and the motion to reconsider is therefore properly before the Court.

The complaint alleges that plaintiff was arrested by the defendant police officers without warrant and without probable

---

1. Inadvertently the Clerk's Office entered a partial judgment dismissing the claim against the Town of Hamden. However, since no direction had been given as required by Rule 54 (b), this judgment is of no effect, and is hereby vacated. *See* 6 Moore's Federal Practice ¶ 54.-34 [2.–2].

cause on charges subsequently dismissed by the State court. The arrest is alleged to have been made "at the express direction" of the defendant chief of police. There is no dispute that these allegations state a claim under § 1983 against the officers and a supervisor alleged to be directly responsible for the episode in question. The pending issue concerns the allegations against the Town, which are set out in the margin.[2]

The Second Circuit determined in *Turpin* that a cause of action for damages against a municipality for deprivation of civil rights can be grounded directly on the Fourteenth Amendment when unconstitutional actions by municipal employees have been "authorized, sanctioned or ratified by municipal officials or bodies functioning at a policy-making level." 579 F.2d at 164. The Court of Appeals also ruled that Turpin's complaint pleaded sufficient facts meeting the announced standard to withstand a motion to dismiss. Turpin alleged that he had successfully sued police officers of the Town of West Haven for police brutality, that his successful suit had received extensive publicity and resulted in widespread animosity against him among officers of the West Haven Police Department, that the Town's Board of Police Commissioners had specifically considered the episode on which the successful police brutality suit was grounded, that the Board had decided against disciplining the officer found liable, that the Board has subsequently promoted this officer, and that this series of events led directly to a second episode in which other West Haven officers arrested Turpin without probable cause on charges subsequently

nolled. As the Court of Appeals viewed the complaint, "Turpin's suit is premised on the contention that the Board of Police Commissioners knowingly encouraged members of the department to violate Turpin's civil rights." 579 F.2d at 166.

The Supreme Court's decision in *Monell,* decided one day after *Turpin,* also upheld municipal liability for denial of constitutional rights, though proceeding along a doctrinally different route. The Court revised its construction of § 1983 to hold that municipalities can be sued for damages under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." 436 U.S. at 690, 98 S.Ct. at 2036. The contrary holding of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), was explicitly overruled. The plaintiffs in *Monell,* pregnant municipal employees, alleged that they had been required to take unpaid leaves of absence before such leaves were medically necessary. Since the action claimed to be unconstitutional in *Monell* was taken pursuant to what was alleged to be official policy of municipal decision-making bodies, the Court had no occasion to consider the circumstances under which specific instances of unconstitutional deprivations by municipal employees could evidence an implicit policy that could be the basis of municipal liability. The Court did

2. Defendant Town of Hamden and its agents for a long time prior to June 2, 1975, knew or should have known that Hamden police officers frequently violated the rights of citizens guaranteed by the Fourth, Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution and frequently make unlawful arrests and file false reports to attempt to cover up their violations of the rights of the people. Nevertheless, the Town of Hamden and its agents failed to undertake reasonable procedures in the selection, supervision, assigning and training of its police officers to prevent such violations. The Town of Hamden and its

agents have refused to take disciplinary measures against Hamden police officers they know have violated the constitutional rights of citizens, and have in various ways assured Hamden police officers of immunity from the consequences of such constitutional violations. The Town of Hamden thereby directly and proximately caused the conduct of defendants Perry, Durkin and Ambrogio complained of herein and the resulting injuries to the plaintiff. At the time of such said acts and omissions by it the Town of Hamden and its agents knew that such acts and omissions would result in these consequences.

**1134**

specifically disclaim the doctrine of *respondeat superior* for a § 1983 cause of action, 436 U.S. 658, 98 S.Ct. 2018, as the Second Circuit had also done with respect to a cause of action grounded on the Fourteenth Amendment, 579 F.2d at 166.

It is against this background that the sufficiency of the plaintiff's complaint must be assessed. At the outset, it would appear appropriate to consider the complaint solely as a claim under § 1983, rather than under the Fourteenth Amendment. It seems apparent that the Court of Appeals would never have proceeded to the constitutional question of an implied cause of action under the Fourteenth Amendment if it had known that a day later a statutory cause of action would be held to have been created under § 1983 by the 42nd Congress. Indeed, Justice Powell, concurring in *Monell*, explicitly points out the "better course" is to correct the prior misinterpretation of § 1983 "[r]ather than constitutionalize a cause of action against local government." 436 U.S. at 713, 98 S.Ct. at 2047. However, while the Supreme Court and the Second Circuit grounded municipal liability on different sources of authority, it appears that both courts announced similar standards for determining when a municipality would be liable for deprivations of constitutional rights.[3]

■ To assess the sufficiency of plaintiff's claim against the Town of Hamden, careful consideration must be given to the elements of a cause of action for municipal liability. Broadly speaking, as *Monell* and *Turpin* make clear, there must be conduct by the town that subjects a person to a denial of constitutional right or causes him to be subjected to such a denial. The municipality is to be liable for its own wrongful action, or perhaps knowing omission, distinct from the wrongful action of a municipal employee.

■ *Monell* makes clear that conduct is the action of a town when the conduct executes or implements official policy of the town. The policy can be found in an ordinance, regulation, policy statement, or decision officially adopted by the town's officers, or in a pattern of "persistent practices" sufficiently known to and approved by town officials to constitute a custom of equivalent though unofficial authoritativeness. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The promulgation of such policy is not limited to the town's law-makers, but is also actionable when made by "those whose edicts or acts may fairly be said to represent official policy." *Monell, supra*, 436 U.S. at 694, 98 S.Ct. at 2038. *Turpin* refers to authorization by "municipal officials or bodies functioning at a policy-making level." 579 F.2d at 164. Presumably, *Turpin* refers to those making what can realistically be considered the policy of the town, rather than all officials at any level of authority within the town government exercising discretion and thereby in some sense creating policy guiding the actions of subordinates.

■ Once it is shown that there is a policy established and maintained by the town, the town is liable for any deprivation of constitutional right caused by conduct pursuant to that policy. The causal link

---

**3.** There is room for inquiry as to whether the Supreme Court intends to recognize a cause of action against a municipality in all circumstances contemplated by the Second Circuit. The focus of *Monell* is on deprivations of constitutional rights undertaken pursuant to municipal policy, whether officially promulgated or authorized by custom. *Turpin* recognizes a cause of action where a specific episode—the arrest of the plaintiff—can be said to have been authorized by official decision-making. *Monell* could be viewed as permitting an unarticulated policy to be inferred only where deprivations of constitutional rights occurred so repeatedly as to indicate a pattern of officially condoned unlawful conduct. *Turpin*, on the other hand, alleged no pattern of unconstitutional deprivations against citizens generally, but a "policy" of unconstitutional action arising out of a single prior episode and its aftermath. Though *Monell* was concerned with a general policy enforced against a large class of individuals, it seems reasonable to conclude that its teachings are equally applicable to a specific policy directed at just one individual, as long as the pleaded facts support the inference that unconstitutional action was taken against the individual pursuant to such a policy.

may be immediate, as in *Monell,* where the policy commands the injury of which the plaintiff complains. Or the causal link may be supplied by the tort principle that holds a person liable for the natural consequences of his actions. *Monroe v. Pape, supra,* 365 U.S. at 187, 81 S.Ct. 473. Whether a deprivation of constitutional right is commanded by a policy of a town or is the natural consequence of a town's policy, the first inquiry concerns the existence of the policy. That inquiry is clouded in a case such as this where the town's policy is not articulated but alleged to be reflected in the acts and principally the omissions of the town's agents, presumably those in sufficiently senior policy-making roles to promulgate town policy.

The ascertainment of an unarticulated policy of a town is similar to the inquiry concerning the liability of supervisory officials accused of responsibility for unconstitutional conduct taken by subordinates. *Respondeat superior* in unavailable to hold either the supervisory official or the town liable for the misconduct of the subordinate. Instead, the liability of the supervisor or the town depends on whether they have commanded the result or adopted a policy, a natural consequence of which is the denial of constitutional right.

The major uncertainty in determining when a supervisor is liable for the misconduct of his subordinates arises when the policy of the supervisor, alleged to have caused the misconduct, is reflected in the supervisor's inaction following a pattern of prior episodes known to the supervisor.

*Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), appears to have cut back substantially on the extent to which supervisory liability can be predicated on inaction. What the Supreme Court found insufficient was the supervisors' *"failure* to act in the face of a statistical pattern" of unconstitutional actions by subordinates.

423 U.S. at 376, 96 S.Ct. at 606 (emphasis original). Prior decisions such as *Hague v. C.I.O.,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), and *Allee v. Medrano,* 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974), were distinguished because of the *affirmative* role alleged to have been played by the supervisory defendants. 423 U.S. at 373–75, 96 S.Ct. 598. Indeed, the dissenting opinion of Mr. Justice Blackmun expressed the apprehension that after *Rizzo* "a state official is not subject to the strictures of 42 U.S.C. § 1983 unless he *directs* the deprivation of constitutional rights." *Id.* at 384, 96 S.Ct. at 610 (emphasis added).

Yet despite Justice Blackmun's fear, it is by no means certain that inaction has been eliminated as a basis for § 1983 liability. After *Rizzo,* the Supreme Court considered the requisite allegations to state a claim of § 1983 liability for inadequate medical treatment of prisoners. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). What must be alleged are "acts or *omissions* sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106, 97 S.Ct. at 292 (emphasis added).[4]

In any event, the Second Circuit has stated after *Rizzo* that liability of a supervisor can be predicated on inaction. "Where conduct of the supervisory authority is directly related to the denial of a constitutional right it is not to be distinguished, as a matter of causation, upon whether it was action or inaction." *Duchesne v. Sugarman,* 566 F.2d 817, 832 (2d Cir. 1977). This seems to be the logical import of holding the supervisor liable for the natural consequences of his conduct because fact situations can readily be imagined where the natural consequence of inaction would be the deprivation of a constitutional right by a subordinate. *Turpin* expressed the view that "Where the actions of subordinate employees are concerted, the failure of super-

---

4. In *Gamble,* the failure to supply medical care was deemed actionable as a corollary to "the government's obligation to provide medical care for those whom it is punishing by incarceration." *Id.,* 429 U.S. at 103, 97 S.Ct. at 290.

It may be doubted whether a municipality has an equivalent obligation to the citizenry at large to assure that constitutional rights are not denied.

visors to control their behavior may, in effect, create a *de facto* departmental policy." [5] It is not clear whether "concerted" refers to an agreement among the subordinate employees or only to a pattern of similar actions by the subordinates.

■ In determining what may be the elements of liability for inaction, it may be useful to distinguish between two contexts. The first is where action is claimed to be required to remedy a specific situation, the continuation of which causes a deprivation of constitutional rights. The second is where action is claimed to be required to prevent the next in a series of previous episodes, indicating a pattern of deprivation of constitutional rights. The first context is illustrated by cases concerning a supervisor's liability for tolerating jail conditions violative of the Eighth Amendment. *E. g., Wright v. McMann,* 460 F.2d 126 (2d Cir. 1972). The second context is illustrated by *Rizzo.*

The first context appears the more likely to survive the impact of *Rizzo.* Where the supervisor has ultimate responsibility for conditions, such as jail cells, courts have imposed liability when the supervisor had actual knowledge of the conditions. That was the situation in *Wright.* Less certain is liability when the supervisor should have known of the conditions. It is stated in *Wright* that the warden "knew or should have known" of the violation, 460 F.2d at 135. However, the decision indicates that the "should have known" element is met not simply by an inference as to what a reasonable man should have known, but by the specific provisions of state law which "charged" the warden with knowledge. *Id.* at 134–35. This same approach was used in *United States ex rel. Larkins v. Oswald,* 510 F.2d 583 (2d Cir. 1974). See *Mukmuk v. Commissioner of Department of Correctional Services,* 529 F.2d 272, 275 n. 5 (2d Cir. 1976). Nothing in *Rizzo* eliminates the liability of a supervisor for inaction when he

has direct responsibility for the maintenance of unconstitutional conditions and knows of their existence. The extent to which he is chargeable with knowledge will undoubtedly be the subject of further litigation.

It is the second context, illustrated by *Rizzo* and *Lewis v. Kugler, supra,* where supervisory inaction is a less certain basis for liability. What *Rizzo* requires when a supervisor is held liable for failure to prevent continuation of a pattern of prior unconstitutional episodes is that the supervisor be "causally linked" to the pattern. 423 U.S. at 375, 96 S.Ct. 598. There are surely intimations in *Rizzo* that this causal link cannot be inferred from inaction alone. If such a case can be stated after *Rizzo,* it must present such extreme facts that inaction by a supervisor with knowledge of a pattern of unconstitutional actions by his subordinates is the equivalent of approval of the pattern as a policy of the supervisor and hence tacit encouragement that the pattern continue. Plainly that will not be an easy standard to meet.

Nor is it an easy standard for which to frame a sufficient pleading. Fed.R.Civ.P. 8 (a) generally requires only "a short and plain statement of the claim," and a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). That approach, permitting bare pleading of a claim, has not, however, always been followed in assessing the sufficiency of civil rights complaints. "Complaints relying upon 42 U.S.C. § 1981 *et seq.* are plainly insufficient unless they contain at least some allegations of *facts* indicating a deprivation of civil rights." *Fine v. New York,* 529 F.2d 70, 73 (2d Cir. 1975) (emphasis added). See also *Powell v. Jarvis,* 460 F.2d 551 (2d Cir. 1972). A requirement of particularized fact pleading has been imposed on attempts to

---

5. It should be noted that the *Turpin* statement concerning failure to supervise cited as an illustrative example *Lewis v. Kugler,* 446 F.2d 1343 (3d Cir. 1971), yet the Third Circuit later determined in that same litigation that *Rizzo v. Goode* prevented a determination of liability on the part of the supervisory defendants. *Lewis v. Hyland,* 554 F.2d 93 (3d Cir. 1977).

allege a cause of action more complex than a claim of injury directly inflicted by the immediate actor, such as a police officer or prison guard. For example, pleading standards far more rigorous than those of *Conley* have regularly been applied by this Circuit to allegations of a conspiracy to deny equal protection of the laws in violation of 42 U.S.C. § 1985 (3). *Birnbaum v. Trussell,* 371 F.2d 672 (2d Cir. 1966); *Powell v. Workmen's Compensation Board,* 327 F.2d 131 (2d Cir. 1964). *Powell* specifically emphasized the flood of complaints that would ensue if a general allegation of conspiracy sufficed. 327 F.2d at 137.

■ The requirement of particularized fact pleading to state a valid conspiracy claim is equally appropriate for statement of a valid claim of municipal liability predicated on the inaction of senior officials that is tantamount to approval of unconstitutional acts by subordinates. At a minimum the pleader must specify the overt acts relied upon as a basis for the claim that a pattern of unconstitutional actions exists and that the senior officials of the town knew of the unconstitutional actions and encouraged their repetition by inaction.

■ The standard for municipal liability predicated on inaction of senior personnel must be frankly acknowledged as difficult to meet. A claim of this sort should not be initiated unless there is a sufficient factual basis to justify the extensive litigation that such a claim entails. The typical § 1983 suit against a police officer for his allegedly unconstitutional action generally involves a single episode. Discovery and trial are entirely manageable. But a claim of municipal liability based on an alleged policy reflected by a pattern of prior episodes will inevitably risk placing an entire police department on trial. Sweeping discovery will be sought to unearth episodes in which allegedly similar unconstitutional actions have been taken,

and the trial will then require litigation of every episode occurring in the community that counsel believes can be shown to involve a similar constitutional violation. Even if a trial of that scope is warranted by a complaint that does allege overt acts with requisite particularity, see *Lewis v. Kugler, supra,* 446 F.2d at 1345 (complaint contained "detailed factual recitations relating to 25 separate incidents"), neither a federal court nor a municipality should be burdened with such an action unless a detailed pleading is presented.

■ The complaint in this case sets forth no facts whatever except those concerning the incident in which plaintiff alleges his rights were violated. There are no facts supporting the allegation that action of the Town is involved. The complaint refers to conduct of "the Town of Hamden and its agents," without specifying the identity or level of decision-making of the agents whose actions are deemed to reflect the policy of the Town. The complaint alleges that Hamden police officers "frequently" violated the constitutional rights of citizens, but no specific episodes are alleged. There are no facts to support the allegation that action of the Town has caused the alleged denial of constitutional rights. The claim against the Town of Hamden rests entirely on a series of conclusory allegations. The Town "knew or should have known" that Hamden police officers "frequently" violate citizens' rights; the Town failed to undertake reasonable procedures to supervise and train police officers; the Town has refused to discipline officers; the Town has "in various ways assured Hamden police officers of immunity from the consequences of such constitutional violations"; the Town has "thereby directly and proximately caused" the episode of which plaintiff complains. These conclusory allegations, devoid of any factual content, are not sufficient.[6] See

6. One member of the *Turpin* majority expressed a qualification that would plainly render this plaintiff's claim against the Town insufficient. In his concurring opinion Judge Oakes identified as a limitation on damage

suits against municipalities the requirement that the action complained of must be the sort of abuse of power that raises an ordinary tort to a constitutional violation. This criterion, he observed, eliminates "some substantial cases

Curtis v. Everette, 489 F.2d 516 (3d Cir. 1973); Sanberg v. Daley, 306 F.Supp. 277 (N.D.Ill.1969).

Plaintiff's motion for reconsideration of the dismissal of the claim against the Town of Hamden is granted, but the claim is again dismissed. Plaintiff is granted twenty days to seek leave to amend. If no timely motion to amend is filed, the Clerk is directed to enter judgment in favor of the Town, there being no just reason for delay. Fed.R.Civ.P. 54 (b). With the large number of police misconduct suits pending in this District, it remains as important as it was in *Turpin* to secure a definitive ruling as to the sufficiency of this type of allegation against a municipality. *Turpin* established that particularized facts can state a claim of municipal liability. It is even more important to know if a claim devoid of facts will also suffice, for a pleading such as the one in this case could be routinely filed against the municipal employer of every police officer sued under § 1983.

such as, for example, those for a first false arrest." 579 F.2d at 169. In the context of *Turpin*, where the victim had been arrested a second time, the reference is presumably to the *victim's* first false arrest. The plaintiff in this case has alleged only a first unlawful arrest. That is sufficient to state a claim against the arresting officer, *e. g., Pritchard v. Perry,* 508 F.2d 423 (4th Cir. 1975), but not, in Judge Oakes' view, against the municipality.