**Frederick W. SCHRAMM and Gail Kettman**

v.

**William J. KRISCHELL, Thomas K. McMahon, and the City of Bridgeport.**

Civ. No. B–79–71.

United States District Court, D. Connecticut.

Oct. 17, 1979.

Burton M. Weinstein, Bridgeport, Conn., for plaintiffs.

Jack Samowitz, Raymond B. Rubens, John J. McNamara, Bridgeport, Conn., for defendants.

## MEMORANDUM OF DECISION

ELLEN B. BURNS, District Judge.

Plaintiffs Schramm and Kettman have filed a three-count complaint charging Krischell and McMahon, police officers in Bridgeport, Connecticut, with police brutality in violation of 42 U.S.C. § 1983. The alleged incident occurred on November 11, 1978, at approximately 12:15 a. m., as the plaintiffs were exiting from Barnaby's Restaurant, located in Bridgeport. Count Three is directed toward the City of Bridgeport, which plaintiffs alleged "has had a custom or policy of condoning and encouraging civil rights violations by police officers within its control which custom or policy is well known to the defendant police officers." Complaint, ¶ 15. The defendant city has filed a motion to dismiss because of an alleged failure to state a claim upon which relief can be granted. This motion is granted without prejudice and plaintiffs have leave to amend their complaint within thirty days of the filing of this memorandum.

For whatever reasons, there is an increasing number of § 1983 cases filed in the federal district courts in Connecticut, which cases allege a variety of police misconduct. *See generally* Newman, *Suing the Lawbreakers: Proposals to Strengthen the Section 1983 Damage Remedy for Law Enforcers' Misconduct,* 87 Yale L.J. 447, 452–53 (1978); Project, *Suing the Police in Federal Court,* 88 Yale L.J. 781 (1979). As a result the judges of this district have been asked, with some frequency, to determine the parameters of municipal liability under § 1983, as proposed by the United States Supreme Court in *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In overruling *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court enunciated the following standard for imposing liability upon a municipality:

Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as

here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

436 U.S. at 690–91, 98 S.Ct. at 2035–36 (footnote omitted).[1]

The first decision to construe *Monell* in this district was *Smith v. Ambrogio,* 456 F.Supp. 1130 (D.Conn.1978), in which Judge Newman granted a motion to dismiss against the Town of Hamden for an allegedly unconstitutional arrest. Judge Newman, whose thoughts have been most influential in this area, stressed that district judges ought to be cautious in applying municipal liability under *Monell* :

The standard for municipal liability predicated on inaction of senior personnel must be frankly acknowledged as difficult to meet. A claim of this sort should not be initiated unless there is a sufficient factual basis to justify the extensive litigation that such a claim entails. The typical § 1983 suit against a police officer for his allegedly unconstitutional action generally involves a single episode. Discovery and trial are entirely manageable. But a claim of municipal liability based on an alleged policy reflected by a pattern of prior episodes will inevitably risk placing an entire police department on

trial. Sweeping discovery will be sought to unearth episodes in which allegedly similar unconstitutional actions have been taken, and the trial will then require litigation of every episode occurring in the community that counsel believes can be shown to involve a similar constitutional violation. Even if a trial of that scope is warranted by a complaint that does allege overt acts with requisite particularity, . . . neither a federal court nor a municipality should be burdened with such an action unless a detailed pleading is presented.

The complaint in this case sets forth no facts whatever except those concerning the incident in which plaintiff alleges his rights were violated. There are no facts supporting the allegation that action of the Town is involved. . . . The complaint alleges that Hamden police officers "frequently" violated the constitutional rights of citizens, but no specific episodes are alleged. There are no facts to support the allegation that action of the Town has caused the alleged denial of constitutional rights. The claim against the Town of Hamden rests entirely on a series of conclusory allegations. The Town "knew or should have known" that Hamden police officers "frequently" violate citizens' rights; the Town failed to undertake reasonable procedures to supervise and train police officers; the Town has refused to discipline officers; the Town has "in various ways assured Hamden police officers of immunity from the consequences of such constitutional violations"; the Town has "thereby directly and proximately caused" the episode of which plaintiff complains. These conclusory allegations, devoid of any factual content, are not sufficient.

1. Just one day prior to the issuance of the Supreme Court's opinion in *Monell,* the Second Circuit released its decision in *Turpin v. Mailet,* 579 F.2d 152 (2d Cir. 1978), in which it extended a cause of action for damages against municipalities for § 1983 violations under the theory enunciated in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Supreme Court vacated *Turpin* in light of *Monell,* 439 U.S. 974, 99 S.Ct. 554, 58 L.Ed.2d 645 (1978) and upon remand, the Second Circuit modified its opinion accordingly, 591 F.2d 426 (2d Cir. 1979). A jury trial was held thereafter at which a verdict of $8,000 was rendered against the city of West Haven. *Turpin v. Mailet,* Civil No. N–78–181 (D.Conn. Apr. 5, 1979).

*Id.* at 1137 (citations and footnote omitted). Judge Newman further warned that in light of the

> large number of police misconduct suits pending in this District, it remains . . . important . . . to secure a definitive ruling as to the sufficiency of this type of allegation against a municipality. . . . It is even more important to know if a claim devoid of facts will also suffice, for a pleading such as the one in this case could be routinely filed against the municipal employer of every police officer sued under § 1983.

*Id.* at 1138.

The *Monell* standards were refined further by Judge Newman in *Penzerro v. Marchionni,* Civil No. B–77–387 (D.Conn. Apr. 18, 1978), in which allegations of police misconduct were directed against Bridgeport police officers. Plaintiffs filed a proposed amended complaint which listed several incidents of police misconduct by police officers in Bridgeport. Judge Newman again ruled that these allegations were insufficient to maintain a cause of action against the city of Bridgeport:

> It may well be that allegations of unrelated episodes sufficiently numerous occurring in a sufficiently narrow time frame can provide the basis for inferring the policy or custom on which municipal liability depends. But unless every complaint alleging police misconduct is to be the occasion for wide-ranging discovery and eventual litigation of all prior episodes in the preceding decade—in reality, a trial of the police department, the permissible inference of policy or custom from unrelated episodes must be kept within some manageable bounds.

> .    .    .    .    .

> Without endeavoring to specify what might be a minimally sufficient allegation of episodes from which a municipal policy might be inferred, it is sufficient to

conclude that the proposed amended complaint alleging seven episodes in the past 11 years does not state a claim on which relief can be granted.

Slip op. at 3–4 (footnote omitted).[2]

A similar position was taken by Chief Judge Pettine in *Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978), where plaintiff alleged physical and verbal abuse by five unknown Providence police officers. The judge's function here was to "define . . . the contours of municipal immunity." *Id.* at 587. Chief Judge Pettine dismissed the claim against the city, describing the requirements for municipal liability as follows:

> Although a city cannot be held liable for simple negligent training of its police force, the city's citizens do not have to endure a "pattern" of past police misconduct before they can sue the city under section 1983. If a municipality completely fails to train its police force, or trains its officers in a reckless or grossly negligent manner so that future police misconduct is almost inevitable, the municipality exhibits a "deliberate indifference" to the resulting violations of a citizen's constitutional rights. In such a case, the municipality may fairly be termed as acquiescing in and implicitly authorizing such violations. In light of the responsibility, authority, and force that police normally wield, a municipality is fairly considered to have actual or imputed knowledge of the almost inevitable consequences that arise from the nonexistent or grossly inadequate training and supervising of a police force. If the plaintiff's injury results from the complete lack of training or grossly inadequate training of a police force, such an injury is not the result of mere negligence but the result of a deliberate and conscious indifference by the city. The training and supervising of these police officers must be so inadequate and the resulting misconduct so

**2.** A related issue arose in *Batista v. Rodriquez,* Civil No. B–78–85 (D.Conn. May 18, 1979), in which plaintiffs, having set forth a complaint similar to that in *Penzerro,* moved for summary judgment. This pre-trial motion was denied for two reasons: first, the motion was premature as the police officers' liability had not been established, and second, the *Smith* and *Penzerro* opinions raised substantial questions as to the sufficiency of the plaintiffs' allegations.

probable, that the city can fairly be considered to have acquiesced in the probability of serious police misconduct.

*Id.* at 590–91 (citations omitted). However, plaintiff was given permission to file an amended complaint. *Id.* at 591.

One of the first appellate decisions to apply *Monell* is *Owens v. Haas,* 601 F.2d 1242 (2d Cir. 1979), in which a federal prisoner, incarcerated in a county jail under a contract between federal and county officials, allegedly was attacked by county correctional officers. Plaintiff's complaint was grounded on three basic claims: § 1983, § 1985, and breach of contract. The district court had dismissed all counts against the county, 456 F.Supp. 1009 (E.D.N.Y.1978), but the Second Circuit reversed and remanded as to the §§ 1983 and 1985 claim, holding that the district court's reading of *Monell* "was too narrow." 601 F.2d at 1246. The district court had ruled that, in order to impose county liability, the violent incident had to be a part of an official policy or custom, or one in a series of incidents of which the county was aware. The Second Circuit disagreed, stating: "While some causal link must be made between the county's failure to train [personnel] and the violation of constitutional rights, a single brutal incident such as this may be sufficient to suggest that link." *Id.* at 1246. The court adopted the *Leite* decision's standard that a governmental body must be guilty of "gross negligence" or "deliberate indifference" before it can be held liable. *Id.* The case was remanded, granting plaintiff an opportunity to amend his complaint and conduct limited discovery, because the failure to train or supervise correctional officers could constitute such "gross negligence" or "deliberate indifference."

The Second Circuit's construction of *Monell* was endorsed in part in *Popow v. City of Margate,* 476 F.Supp. 1237 (D.N.J.1979), where the plaintiff's husband had been killed when he accidently was shot by a Margate policeman pursuing a suspected kidnapper. The district court denied the city's motion for summary judgment, agreeing with the *Owens* conclusion that failure to train or supervise police officers can reach the levels of "gross negligence" or "deliberate indifference" on the part of the town. *Id.* at 1243. However, it explicitly rejected the Second Circuit's language that a single incident could trigger municipal liability. *Id.*

The complaints filed in *Penzerro v. Marchionni, supra,* and in *Batista v. Rodriquez,* Civil No. B–78–85 (D.Conn. May 18, 1979), contained a roster of "horrors" perpetrated by the Bridgeport police department, some of which had resulted in a judicial finding of civil or criminal liability. However, no analysis was made linking these incidents together. In *Penzerro* Judge Newman described them as "wholly unrelated episodes." *Penzerro v. Marchionni, supra,* slip op. at 3. The complaint in the instant case fails for the opposite reason. Plaintiffs this time allege the specific manner in which the city of Bridgeport condones or encourages civil rights violations, including, *inter alia,* failure to institute disciplinary proceedings, failure to investigate, and condoning the filing of false reports. Paragraph 16(a) through (k). However, these allegations are not supported by detailed reference to specific incidents. The complaint here is like that in *Smith,* "conclusory allegations, devoid of any factual content." 456 F.Supp. at 1137. While the Second Circuit may not require that a certain minimum number of episodes occur before governmental liability may arise under *Owens v. Haas,* it is clear that where one particularly violent incident is alleged, it is still necessary for detailed pleading to establish municipal liability for failure of supervision or condonation. Therefore, this court finds that in order to bypass this motion to dismiss filed by the defendant governmental body, the complaint must make reference in detail to specific incidents of misconduct by government officials and must extrapolate from these incidents to indicate the particular manner in which the governmental body, by omission or commission, has placed its imprimatur upon the actions of its officers. Such an

integrated complaint would satisfy the inherently conflicting interests of judicial economy expressed in *Smith* and *Penzerro* and the interests of justice articulated in *Owens*. Accordingly, the motion to dismiss filed by the city of Bridgeport is granted without prejudice and plaintiffs may file an amended complaint, which complies with the guidelines of this decision, within thirty days of the filing of this memorandum.

One further matter remains outstanding in this file. First, defendants have filed a motion to strike paragraphs 4 through 10 as being "immaterial, scandalous and evidentiary matters." Without specifically mentioning the relevant rule, the court assumes that defendants are invoking Fed.R.Civ.P. 12(f), which reads in relevant part: ". . . the court may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Such motions are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation. If there is any doubt as to the possibility of relevance, a judge should err on the side of denying a Rule 12(f) motion, especially if the presence of the material at issue does not prejudice the moving party. *See generally* 2A Moore's Federal Practice ¶ 12.21[2]. Defendants' motion to strike is denied as paragraphs 4 through 10 form the basis of plaintiffs' claim of police brutality and therefore have considerable bearing on the subject matter of the litigation.

SO ORDERED.