OPINION OF THE COURT
Arthur D. Spatt, J.
Again, the complex question of a municipality’s liability under section 1983 of title 42 of the United States Code, for alleged violation of civil rights, is at issue. Here we have presented a “policy” of the County of Nassau which, it is alleged, deprived plaintiff of his constitutional rights.
NATURE OF THE MOTION
These motions by defendant County of Nassau (County) for an order, pursuant to CPLR 3212, granting summary judgment dismissing the complaint and cross claims against the County; by plaintiffs for an order, pursuant to CPLR 3212 and 3126, striking the answer of defendant County and setting this matter down for an inquest; and by *150 defendants Metropolitan Transportation Authority (MTA) and Metropolitan Suburban Bus Authority (MSBA) for an order, pursuant to CPLR 3126, granting judgment on their cross claims against the defendant County, are determined as set forth below.
BACKGROUND AND CONTENTIONS
This action for violation of the civil rights of plaintiff Raphael Turbin (plaintiff) arises out of an alleged false arrest and malicious prosecution.
It is alleged that on April 21, 1978, at the Hempstead Bus Terminal, plaintiff, a “handicapped” individual, attempted to board a MSBA bus with a certain “half fare” identification card. Plaintiff alleges that the bus driver refused to honor the “half fare” card issued to plaintiff by the City of New York. The driver demanded payment of the full fare. Thereafter, plaintiff was arrested, detained and prosecuted for “theft of services” (Penal Law, § 165.15). The charge was subsequently dismissed.
In the complaint, plaintiff alleges that the arresting police officers were employed by the Incorporated Village of Hempstead and the County of Nassau. It is alleged as follows: “6. On April 21, 1978, and for some time prior thereto, the county of Nassau and/or the incorporated village of hempstead employed certain police officers who were involved in the occurrence of April 21, 1978.”
Pursuant to the examinations before trial had of the bus driver, Joseph M. Carroll, the bus dispatcher, George Carlson, and the arresting officer, Robert C. Miller, it appears that “the only involvement the plaintiff had with the County of Nassau was for purposes of fingerprinting and photographing at the request of the Hempstead Police Department *** and that no Nassau County Police Officer was present at the time the plaintiff was arrested”.
Further, defendant County contends, by way of affidavit by Henry W. Dwyer, Deputy County Executive, that “in 1973 the defendant County of Nassau relinquished all control, involvement and jurisdiction over public bus service to the Metropolitan Suburban Bus Authority as demonstrated by the enclosed lease agreement”.
*151 In opposition to defendant County’s motion for summary judgment, plaintiff contends that there are issues of fact which preclude summary judgment. Plaintiff contends that the lease agreement between County and MSBA does not substantiate County’s contention that it (County) has nothing to do with honoring of New York City “handicapped” identification cards on the buses in Nassau County.
Further, plaintiff contends that defendant County has violated court orders with regard to discovery. In particular, plaintiff asserts that an examination before trial of the defendant County might establish that defendant County had something to do with the policy regarding the “lack of honoring” the “handicapped” identification card.
Plaintiff points to the order of this court dated June 19, 1980 (Burstein, J.) wherein the County was directed to comply with a notice for discovery and inspection, and to appear for examination before trial on July 22, 1980.
At the examination before trial of the defendant County held on July 22, 1980, the attorney for the defendant County made the following statement, on the record: “mr. o’brien: On behalf of the County of Nassau, I would like to state for the record that we have no witnesses to produce, and we intend to produce none. I have made a complete review of the file in this case, and I find no connection between the incident complained of and the allegations in the Complaint as amplified by the Verified Bill of Particulars to implicate the County of Nassau in any way. The arresting officers were employees and agents of the Incorporated Village of Hempstead over which the County of Nassau has no control. The County of Nassau does not own, operate, maintain or have any connection with the Metropolitan Transportation Authority and the Metropolitan Suburban Bus Authority, the other named defendant, and, under the circumstances, I would ask the plaintiffs’ attorney to enter into a stipulation of discontinuance with the defendant, County of Nassau. I will participate in the examination on a limited basis to verify the understandings that I have previously represented on this record.”
Plaintiff contends that defendant County “set the policies, guidelines, standards, rules, and regulations with *152 respect to acceptance of non-Nassau County resident handicapped identification passes and as a result of their rules, regulations, guidelines and policies, the instant occurrence was caused to take place”.
This is especially true, says plaintiff, in view of a letter received by plaintiff from the County of Nassau Department of Recreation and Parks, dated June 2, 1978, which reads as follows:
“Dear Mr. Turbin:
“In compliance with Federal regulations, the Nassau County Office of Public Transportation has authorized the Metropolitan Suburban Bus Authority to accept non-Nassau County Resident Senior Citizen or Handicapped Person certified identification card for half-fare on bus routes operated in Nassau County.
“Our policy of issuing Leisure Passes only to residents of Nassau County has not changed.
“Sincerely yours,
[signed] “Henrietta Lichtenbaum
Information Specialist”.
Further, plaintiff asserts that the said lease agreement provides that County shall have the right to inspect the books and records of the MSBA; therefore, says plaintiff, the County does have some control over MSBA.
This is further demonstrated, says plaintiff, by a letter from the Director of the Nassau County Office of Public Transportation dated June 20, 1975, which reads, in part, as follows:
“Mr. Andrew G. Schiavone, Executive Officer
“Metropolitan Suburban Bus Authority
“One Old Country Road
“Carle Place, NY 11514
“Dear Mr. Schiavone:
“I wish to extend my appreciation to your office for its cooperation in the Half-Fare Program for the Handi *153 capped. This program, as detailed in the enclosed Press Release, will be implemented on Monday, June 30, 1975. As with the ongoing Senior Citizen reduced fare program, the handicapped program will be applicable at all time of the day, seven days per week on the bus system.
“For participation in the program, a patron must show the bus operator a special Leisure Pass issued by the Nassau Co. Department of Recreation and Parks. The special pass will be identified by a large capital ‘H’ embossed onto the standard Leisure Pass. Parks and Recreation has requested that the bus operators be advised of the program and of the identification procedure to insure implementation.
“This new reduced fare requirement is not intended to supplant the existing HBC free ride program which we understand will be retained.
“If you need additional information or clarification, please contact me as soon as possible as only with your cooperation and our continuing interaction can our handicapped residents avail themselves of this program.”
The press release referred to in the June 20,1975 letter, on the letterhead of the then County Executive of Nassau County, reads, in part, as follows:
“Washington, D.C. — In testimony today before a U.S. Senate committee, Nassau County Executive Ralph G. Caso revealed that effective June 30 handicapped Nassau residents will be able to ride county buses at half fare.
“The half fare program, already in existence for the elderly, is being extended to county residents certified as handicapped by established service agencies or private physicians and handicapped patients at county health centers. Persons who because of a disability are ineligible to operate a motor vehicle will be eligible to participate in the half fare program with a specially-marked county leisure pass.
“ ‘It should be a matter of national policy that the handicapped have the same right as other persons to utilize mass transportation facilities and services,’ Caso stated. Tt would permit many of them to find gainful employment *154 and enter into the mainstream of their communities, not as passive onlookers, but as active participants.’ ”
The thrust of plaintiff’s claim against defendant County is that defendant County has established a “policy” whereby those qualifying for the handicapped card must be a resident of the County of Nassau in order to exercise the benefits afforded to all those handicapped persons by Federal law, and that such a “policy” is actionable herein.
THE LAW
The issue presented is the liability, if any, of the defendant County under an “unlawful discriminatory policy” theory. Stated simply, assuming that the defendant County did, in fact, establish a policy of not permitting non-Nassau “handicapped” persons to obtain half-fare rates on buses, is such a policy actionable in this case for false arrest, malicious prosecution and violation of civil rights?
It is undisputed that the County had nothing to do with the incident on the bus, the decision by the bus driver to arrest plaintiff for “theft of services”, and plaintiff’s arrest, detention and prosecution by the Village of Hempstead police. Therefore, the only liability against the County is the alleged policy of the County not to permit non-Nassau residents to obtain half fare on the buses operated by defendant MSBA.
Let us assume, arguendo, that an examination before trial of the defendant County produces facts sufficient to demonstrate that the County does, in fact, have a policy of not permitting non-Nassau handicapped persons to receive the “half fare”. Could such a policy form the basis of liability in this case? Is the adoption of such a policy a proximate cause of the occurrences herein? This court thinks not.
Under Monell v New York City Dept. of Social Servs. (436 US 658), a municipality may be sued for damages under section 1983 of title 42 of the United States Code only when constitutional violations have been committed pursuant to an “official policy” or custom. The “official policy” referred to relates to the deprivation of a constitutional right, not *155 the policy of a municipality’s regulation of the fares on public transit. The theory upon which liability, if any, may be found herein rests on a policy, if one exists, by County “to arrest and detain handicapped persons on buses for failure to pay the full fare”.
A policy of charging full fare to handicapped non-Nassau residents cannot be a proximate cause of this incident. At this point, there has been no proof submitted that the County had a policy of enforcing its regulations by causing bus riders to be arrested for “theft of services”, or that the County even had authority to formulate such a policy.
Moreover, in Turpin v Mailet (619 F2d 196), it was held that “official policy” cannot ordinarily be inferred from a single incident of illegality, such as a first false arrest or excessive use of force, absent some additional circumstances. (See, also, Singleton v City of New York, 632 F2d 185.)
The plaintiff, who has to lay bare its proof in order to defeat summary judgment, has failed, thus far, to submit any facts which would demonstrate a policy by the defendant County to arrest, detain or prosecute nonresident handicapped persons who ride MSBA buses, or even demonstrate that the County has jurisdiction or undertakes to formulate any such policy with regard to MSBA buses.
Monell makes clear that the policy in issue can be found in an ordinance, regulation, policy statement and decision officially adopted by the County’s officers, or in a pattern of “persistent practices” sufficiently known to and approved by County officials to constitute a custom of equivalent though unofficial authoritativeness. (Adickes v Kress & Co., 398 US 144, 167.)
“Proximate cause” may be supplied by the tort principle that holds a person liable for the natural consequences of his actions. (Monroe v Pape, 365 US 167,187.) The “policy” may be one of “inaction” as well as affirmative conduct. (See Rizzo v Goode, 423 US 362; Estelle v Gamble, 429 US 97; Duchesne v Sugarman, 566 F2d 817.)
The difficulty in pleading and proving County “inaction” with regard to a claimed policy resulting in a violation of civil rights, is spelled out by Judge Newman in the case of *156 Smith v Ambrogio (456 F Supp 1130, 1137), in which the court granted a motion to dismiss for failure to state a cause of action, stating as follows:
“The standard for municipal liability predicated on inaction of senior personnel must be frankly acknowledged as difficult to meet. A claim of this sort should not be initiated unless there is a sufficient factual basis to justify the extensive litigation that such a claim entails. The typical § 1983 suit against a police officer for his allegedly unconstitutional action generally involves a single episode. Discovery and trial are entirely manageable. But a claim of municipal liability based on an alleged policy reflected by a pattern of prior episodes will inevitably risk placing an entire police department on trial. Sweeping discovery will be sought to unearth episodes in which allegedly similar unconstitutional actions have been taken, and the trial will then require litigation of every episode occurring in the community that counsel believes can be shown to involve a similar constitutional violation. Even if a trial of that scope is warranted by a complaint that does allege overt acts with requisite particularity, see Lewis v. Kugler, supra, 446 F.2d at 1345 (complaint contained ‘detailed factual recitations relating to 25 separate incidents’), neither a federal court nor a municipality should be burdened with such an action unless a detailed pleading is presented.
“The complaint in this case sets forth no facts whatever except those concerning the incident in which plaintiff alleges his rights were violated. There are no facts supporting the allegation that action of the Town is involved. The complaint refers to conduct of‘the Town of Hamden and its agents,’ without specifying the identity or level of decision-making of the agents whose actions are deemed to reflect the policy of the Town. The complaint alleges that Hamden police officers ‘frequently’ violated the constitutional rights of citizens, but no specific episodes are alleged. There are no facts to support the allegation that action of the Town has caused the alleged denial of constitutional rights. The claim against the Town of Hamden rests entirely on a series of conclusory allegations.” (Emphasis supplied.)
Here, there is a failure to show that the County had a “policy” proximately causing a violation of plaintiff’s con *157 stitutional rights or resulting in the tortious acts of false arrest and malicious prosecution.
CONCLUSION
On the state of this record as it is presented to the court, this court would ordinarily have granted summary judgment in favor of the County dismissing the complaint and cross claims. However, as there is a prior outstanding order of this court directing that oral depositions of the County be taken, and as it appears that the County, unilaterally and without authority, determined to disregard said order, the court shall afford the plaintiff and codefendants an opportunity to conduct an examination before trial of the County by all its supervisory employees having knowledge as to the role of the County in formulating policy as to:
1. The County’s relationship with defendant MSB A insofar as handicapped persons fare prior to and at the time of this occurrence.
2. Law enforcement with regard to handicapped persons on MSB A buses on and prior to the time of the occurrence.
Let it be clearly understood that this direction is not by way of sanction, but rather to afford the plaintiffs the opportunity, heretofore granted to them, to elicit facts to establish their cause of action.
The defendant County is given leave to renew this motion at the conclusion of the said depositions.
The cross motions by the plaintiffs and defendant MSBA are granted only to the extent of directing the examination before trial referred to above.
Settle order on notice which shall contain a decretal provision providing a date for such examination before trial.