**Alfred EDWARDS, Plaintiff,**

v.

**CITY OF NEW YORK, et al.,
Defendants.**

**No. 82 CIV. 0128 (PKL).**

United States District Court,
S.D. New York.

Aug. 30, 1988.

Harold S. Elovich, New York City, for plaintiff.

Peter L. Zimroth, Corp. Counsel, New York City, Ronald Younkins, and Susan M. Kath, of counsel, for defendant City of New York.

OPINION & ORDER

LEISURE, District Judge:

This is an action for violation of section 1983 of Title 42 of the United States Code against the City of New York (the "City") and six police officers employed by the City. Plaintiff Alfred Edwards ("Edwards") alleges that the City failed to instruct and train defendant police officers and that the City knew that defendant police officers had a "habit of drinking on the job in excess; [knew] of their prior vicious, malicious, quarrelsome and pugnacious attitude and tendencies, ... [and knew of] prior complaints and acts referrable to the aforesaid police officers...." Complaint ¶ 9. Plaintiff also alleges that the City has a policy of failing to supervise police officers who have a history of alcohol abuse, that the City was deliberately indifferent to these police officers' use of excessive force and that the City's policy of indifference

led to a violation of plaintiff's constitutional rights.

The City has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because plaintiff has failed to support his allegations against the City with specific facts, or to present sufficient evidence showing that there is a genuine issue for trial, the Court grants the City's motion for summary judgment.

## FACTUAL BACKGROUND

For the purposes of this motion only, the Court will accept the plaintiff's version of the incident giving rise to this action. Edwards was a police officer with the New York City Police Department ("Police Department").[1] At approximately 11:45 p.m. on February 20, 1981, Edwards was in Sally's Discotheque at the Sheraton Hotel Center. While standing at the bar, he was approached by two men dressed in plain clothes. These men, defendant police officers Daniel Kelly ("Kelly") and William McAuliffe ("McAuliffe"), began interrogating Edwards in the bar, and then dragged him backwards into the corridor in the lobby just outside of the discotheque. Kelly had identified himself as a police officer, but did not give Edwards an opportunity to identify himself. Once in the corridor, Kelly forced Edwards against a wall and beat Edwards with his fists while McAuliffe watched. Edwards' repeated efforts to identify himself as a police officer and attempts to persuade either officer to call a duty sergeant were unsuccessful.

Lieutenant James Robert ("Robert") and three other plain clothes officers, also named as defendants in this action, eventually appeared but did not prevent Kelly from continuing his assault on Edwards and did not check Edwards' identification. Some time after Lieutenant Robert arrived, Kelly went into the bar, returned with a bottle of Heineken beer and continued hitting Edwards. After Kelly stopped assaulting him, Edwards showed Lieutenant Robert his police shield and identification.

Lieutenant Robert suggested that Edwards and Kelly shake hands and forget the entire incident.

Edwards left the hotel, drove to the Midtown North Precinct, where all the defendants were stationed, and filled out a complaint report, requesting that all officers involved in the incident be arrested. He was then taken by ambulance to a hospital where he was examined and had x-rays taken. At that time Edwards was having problems seeing, had a headache, and a pain down his back.[2] Afterwards, Edwards returned to the precinct to continue his interview with the duty captain and was told that the report would not be filed or used. Edwards took a copy of the report, and on his way home he stopped at the 112th precinct to request that the defendant police officers be arrested.

Edwards maintains that Lieutenant Roberts and police officers Kelly and McAuliffe had been drinking at a retirement party before going on duty at approximately 5:30 P.M. As stated above, the Court accepts this statement of facts for the purposes of this motion.

## DISCUSSION

A municipality may be held liable under section 1983 for a constitutional violation caused by action taken "pursuant to official municipal policy." *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). In order to hold a municipality liable for an unconstitutional act committed by an employee, plaintiff must first establish that there is a municipal policy, and

---

**1.** In June 1980, while on duty, Edwards was in a car accident and was hospitalized for three days. Edwards had injured his back, neck and shoulder, and was on sick leave from the police department at the time of the incident at issue in this case.

**2.** After the incident, plaintiff consulted several doctors about "humming" in his ears and a loss

of hearing. Substantial loss of hearing remained after the incident, and the prognosis for recovery of hearing is not optimistic. Report of Donald R. Weisman, M.D., P.C., dated October 31, 1983, annexed as Exhibit K to Affidavit of Harold S. Elovich, Esq., sworn to on December 18, 1987. Dr. Weisman's prognosis was "[h]opeless for spontaneous return of normal hearing in either ear...." *Id.*

second, that the policy caused the violation of plaintiff's right. *Monell,* 436 U.S. at 692, 98 S.Ct. at 2036. *See also Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985), *cert. denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983).

■ Plaintiff correctly states that a municipality's policy need not be clearly stated but can be inferred from a city's conduct, from its informal acts, or from its failure to act. *Turpin v. Mailet,* 619 F.2d 196, 201 (2d Cir.), *cert. denied,* 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). It is also correct that, under certain circumstances, a city may be liable for just one act of a city-authorized decision maker. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). In *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), however, a plurality of the Supreme Court found that, without additional evidence, a city could not be held liable for one act committed by a lower level employee. *Id.* at 823, 105 S.Ct. at 2436. *See also Sarus v. Rotundo,* 831 F.2d 397 (2d Cir. 1987) (municipal policy could not be inferred only from evidence regarding plaintiff's own arrests); *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987); *Camarano v. City of New York,* 624 F.Supp. 1144, 1147 (S.D.N.Y.1986) ("allegation of a single instance of mistreatment by a police officer ... is insufficient to establish an unconstitutional municipal policy attributed to a municipal policymaker.") Thus, to hold a municipality liable, the act must have been committed by a policymaker, or plaintiff must present evidence of a municipal policy in addition to the one incident that is the subject of the suit.

■ Plaintiff in this case has only presented the incident itself as evidence of the City's policies of failing to instruct and train defendant police officers, failing to supervise police officers with histories of alcoholic problems, and the City's deliberate indifference to those officers' use of excessive force. Similarly, plaintiff's allegation that the City knew of the defendant police officer's backgrounds and violent tendencies, relies only upon the incident itself for substantiation.

The central issue is thus whether plaintiff has presented sufficient evidence regarding its allegations against the City to defeat the City's motion for summary judgment. Summary judgment is appropriate when " 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' " *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (citing *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). In evaluating a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Liberty Lobby,* 477 U.S. at 247–49, 106 S.Ct. at 2509–11, 91 L.Ed.2d 202 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any' which it believes demonstrate an absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. However, Rule 56 does not require that the moving party support its motion with affidavits or other

similar materials which negate the opponent's claim. The "burden on the moving party may be discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, who " 'must set forth specific facts showing that there is a genuine issue for trial.' " *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510 (quoting Fed.R.Civ.P. 56(e)). Because the district court must determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved in favor of either party,"—the nonmoving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* (citations omitted). In this case, while defendant has satisfied its summary judgment burden, the plaintiff has failed to produce any evidence demonstrating the existence of any genuine issue of material fact for trial.

The only evidence plaintiff has submitted indicates that police officer Kelly was diagnosed as an alcoholic in August 1975. As a result, Kelly was placed on restricted duty, went to counselling services for three months, and then returned to full duty in November 1975. From that time until February, 1982, when this incident occurred, Kelly's record is clear. There is no history of prior complaints about him, and nothing in his record to suggest a violent disposition or a "pugnacious attitude." Plaintiff has not submitted any deposition testimony, affidavits, or evidence from anyone who has worked with Kelly or knows about his disposition or attitude. The Court is presented with an allegation that the City should have been aware of Kelly's violent attitude, but there is no proof that Kelly, in fact, had any attitude problem. In fact, plaintiff has not presented any evidence to support his claims about any of the individual police officer defendants, and the City's knowledge of their "propensities."

Most importantly, plaintiff has failed to support his allegation of a municipal policy of failing to instruct and train the defendant police officers, failing to supervise police officers with a history of alcohol abuse, and deliberate indifference to those officers' use of excessive force. There is no evidence of what the police department's policy regarding training of police officers is, and what the policy regarding police officers with prior records of alcohol abuse is, nor is there any deposition testimony by a member of the police department with knowledge of such policies. Plaintiff has also indicated that there will be expert witnesses on police procedures for police officers with alcohol or potential alcohol abuse problems.

But plaintiff has not submitted to the Court any deposition testimony, or affidavits from possible witnesses to support this claim. Without more evidence than the incident on February 21–22 itself, the Court is compelled to find that a trier of fact could not find for plaintiff in his action against the City. By its very terms Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, *an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading,* but the adverse party's response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e) (emphasis added). *See also Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505 (in response to a summary judgment motion, the nonmoving party must state specific facts which show that there is a genuine issue for trial).

Plaintiff's contends that *Fiacco v. City of Rensselaer,* 783 F.2d 319 (2d Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987), compels denial of the City's motion. Plaintiff's reliance on *Fiacco* is misplaced. In *Fiacco,* the Court of Appeals rejected the defendant city's argu-

ment that plaintiff failed to submit sufficient evidence to prove a violation of the plaintiff's constitutional rights and that the City was liable under Section 1983. *Fiacco* does stand for the proposition that a municipal policy can be inferred from actions or omissions by the police department. Fiacco, however, unlike plaintiff here, presented additional evidence to the Court. To prove that the City failed to exercise reasonable care in investigating claims of police brutality, Fiacco showed what the police department's rules and regulations were concerning use of force by police officers and their rules and regulations concerning police policy on how to proceed after complaints were made about officers. Fiacco also presented witnesses with similar complaints who had brought their complaints to the City prior to Fiacco's incident with the police.

In contrast, plaintiff here has presented the Court with transcripts of depositions and Police Department IAD reports that relate to the incident in question. The only "evidence" that relates to a policy on the part of the City is a transcript of the Oprah Winfrey Show (the "Show") dealing with the problems of policemen. Aside from obvious problems of admissibility, the transcript of the Show is not focused exclusively on the policies of the City of New York.

Thus, the instant case is much closer to *Sarus v. Rotundo, supra,* 831 F.2d 397, than to *Fiacco.* In *Sarus,* the Second Circuit compared the evidentiary showing made in that case to the showing made in *Fiacco.* The Court's finding in *Sarus* is equally applicable here: "In marked contrast, the record before us is wholly devoid of any evidence if inadequate training or supervision within the Utica police department." *Sarus,* 831 F.2d at 401. Because plaintiff in this case has not presented the Court with any evidence of a municipal policy, the Court must grant the City's motion.

This result is not unfair. Plaintiff has had over six years to conduct discovery, and on February 19, 1987, Magistrate Roberts ordered that all discovery be completed by April 15, 1987 and that trial witness lists be exchanged no later than March 31, 1987. Magistrate Roberts noted in her June 8, 1987 Order that discovery had been completed, with the exception of five depositions referred to in the City's June 10, 1987 letter to Magistrate Roberts. Plaintiff did not turn over his list of expert witnesses until December 18, 1987, after the City had moved for summary judgment.

Moreover, as then District Judge Newman explained in *Smith v. Ambrogio,* 456 F.Supp. 1130 (D.Conn.1978),

> a claim of municipal liability based on an alleged policy reflected by a pattern of prior episodes will inevitably risk placing an entire police department on trial. Sweeping discovery will be sought to unearth episodes in which allegedly similar unconstitutional actions have been taken, and the trial will then require litigation of every episode occurring in the community that counsel believes can be shown to involve a similar constitutional violation. Even if a trial of that scope is warranted by a complaint that does allege overt acts with requisite particularity, neither a federal court nor a municipality should be burdened with such an action *unless a detailed pleading is presented.*

*Id.* at 1137 (citation omitted, emphasis added). Accordingly, plaintiff cannot be heard to complain that the result here is unfair when, at the summary judgment stage, plaintiff has failed to adduce any detailed facts in support of his claim against the City.

CONCLUSION

Summary judgment is granted for the City of New York. Accordingly, the Court orders that the complaint be dismissed as to defendant City of New York.

Counsel for plaintiff and the remaining defendants are hereby ordered to appear at a final pretrial conference on September 23, 1988 at 3:00 p.m. in Courtroom 36.

SO ORDERED.