Eric LEVINE

v.

**TOWN OF WEST HARTFORD POLICE DEPARTMENT; Detective Robert Moylan and Chief of Police Francis Reynolds, both of the West Hartford Police Department, in their individual and official capacities.**

Civ. No. H–81–738.

United States District Court,
D. Connecticut.

June 23, 1982.

David Fite Waters, Igor I. Sikorsky, Jr., Hartford, Conn., for plaintiff.

Robert P. Volpe, Corp. Counsel, West Hartford, Conn., for defendants.

## RULING ON DEFENDANTS'
## MOTION TO DISMISS

CLARIE, Chief Judge.

The defendants have moved to dismiss the plaintiff's claim of impropriety and conflict of interest on the part of municipal police officials in this civil rights action commenced under 42 U.S.C. § 1983. They claim that even if the plaintiff proves that they violated the Town of West Hartford Personnel Regulations when hiring five police officers, this transgression does not rise to a level of constitutional significance sufficient to invoke the civil rights protections of § 1983. The plaintiff argues that when the defendant Town adopted its conflict of interest regulation, it implicitly created a property or liberty interest, for the benefit of competitive applicants for municipal employment, to have their applications considered by an impartial appointing authority. Levine charges that the Town, by allowing Chief Reynolds and Detective Sergeant Moylan to participate in determining

who would be appointed to the five vacant positions within its Police Department, where the sons of these officials were the applicants who were ultimately appointed to fill these vacancies, violated the plaintiff's civil rights under § 1983. Levine further alleges that he suffered serious damage to his reputation in the community by virtue of the defendants' prejudicial action.

■ The Court finds that when a city or town adopts specific conflict of interest regulations governing municipal employment, it is lawfully obliged to comply with the procedures outlined in those regulations and, failing such adherence, the municipality and the participants are subject to suit in federal court under 42 U.S.C. § 1983 by any person who has been injured by the wrongful application of those regulations. The defendants' motion to dismiss is accordingly denied with respect to Count One. However, the Court grants the defendants' motion to dismiss the Second Count, which alleges injury to reputation, a claim for common law defamation, which is more appropriately resolved in state court under Connecticut tort law.

### Facts

The plaintiff Levine is a citizen of the United States who currently resides in the Town of West Hartford, Connecticut. During April of 1980, he applied for employment as a city police officer with the defendant Town, in response to the latter's announcement that it expected to appoint five persons to the positions of entry level police officers. When such openings occur within the Police Department, Town regulations require that the agency administer a written examination, provide for a suitable physical agility test for all prospective applicants and then conduct oral interviews for those who received the highest scores on these combined tests.

Based upon his performance on the written examination and physical agility test, the plaintiff received the third highest rating as a prospective candidate for employment. In light of his standing on the merit list, the Chief of the Police Department

interviewed Levine and then directed Detective Sergeant Moylan to conduct an investigation of his personal background to determine whether he possessed the proper moral character to serve as a police officer. Upon completing this interview and investigation, the defendant Police Chief Reynolds informed Levine that he did not meet the high standards of character that were required by the Department and thus he would not be offered a position with the Town Police Force. Chief Reynolds did not discuss or explain to Levine the precise reasons why his character was deficient. Chief Reynolds' son, although ranking number ten on the Town merit list, was in fact appointed as a West Hartford police officer.

After he learned of the defendant Town's decision, the plaintiff commenced this litigation, claiming that when the West Hartford Council adopted explicit conflict of interest regulations, it created a liberty or property right, in favor of prospective applicants for municipal employment which required that they be considered by an impartial, disinterested decision-making authority. Levine further alleges that when the Town permitted defendants Chief Reynolds and Detective Moylan to participate extensively, and ultimately decide, who would be chosen at a time when their own sons were applicants for these positions [1], violated the plaintiff's civil rights under 42 U.S.C. § 1983. The defendants attack Levine's claims on jurisdictional grounds, arguing that there is no constitutional or civil right under § 1983 to challenge such alleged conflicts of interest in municipal hiring practices.[2]

### Discussion

42 U.S.C. § 1983 provides that:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

Enterprising § 1983 plaintiffs have alleged a myriad of constitutional and civil rights violations, ranging from deprivation of employment,[3] housing,[4] and affronts to reputation,[5] in an effort to persuade the courts that their claimed injuries should be actionable under the broad language of this civil rights provision. The federal courts have responded to this deluge of § 1983 actions by requiring that the plaintiffs in such actions allege, with factual and legal specificity, "the civil rights or constitutional guarantee safeguarding the interest he asserts has been invaded." *Paul v. Davis*, 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976); *Smith v. Ambrogio*, 456 F.Supp. 1130, 1132 (D.Conn.1978).

The plaintiff concedes that the burden of pleading specific factual and legal support for his § 1983 claim is a substantial one. Levine argues, however, that he has satisfied this demanding burden, because he has alleged that the defendants violated the Town of West Hartford's explicit conflict of interest regulation when considering his application for municipal employment. He further claims that this alleged violation of municipal law raises sufficiently serious questions of constitutional and civil rights law to be actionable under § 1983. The

1. In fact, three of the five persons who were appointed as police officers by the defendant Town were sons of Police Department Officers: (1) the Assistant Police Chief's son, who was ranked number one on the merit list; (2) Detective Moylan's son, who was ranked number five on the merit list; and (3) Chief Reynold's son, who was ranked number ten on said list.

2. See defendants' Memorandum in Support of their Motion to Dismiss, at 4.

3. *See Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

4. *See Otero v. New York City Housing Authority*, 344 F.Supp. 737, 745 (S.D.N.Y.1972).

5. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

defendants challenge the plaintiff's characterization of the issue as a federal civil rights law violation and their posture is that § 1983 was never intended to be used as a basis to challenge alleged violations of Town personnel regulations. Thus, the initial legal issue is whether or not the Due Process Clause to the United States Constitution guarantees an individual the right to impartial consideration for municipal employment; for if such a right exists, then § 1983 would provide a statutory remedy.

When such a violation of the Due Process Clause is asserted as the basis for a § 1983 claim, the threshold issue is "whether liberty or property interests sufficient to invoke the protections of the Fourteenth Amendment have been implicated": [6]

> "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property ... [and] the range of interests protected by procedural due process is not infinite." *Webster v. Redmond,* 599 F.2d 793, 796 (7th Cir. 1979), *quoting Board of Regents v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

Federal courts have consistently stated that "[i]f no protectable liberty or property interest is found to be implicated, no process is 'due' and no reason or hearing need be given." *Webster v. Redmond, supra,* 599 F.2d at 797.

In this dispute, the liberty or property interest at stake is somewhat difficult to characterize. The Supreme Court's decision in *Board of Regents v. Roth, supra,* disabused prospective § 1983 plaintiffs of the claim that there is an inherent liberty or property interest in employment. In *Roth,* the plaintiff was hired by the California Board of Regents to teach for a fixed term of one academic year. Upon completing this assignment, Roth was informed that he would not be rehired for the next academic year. The plaintiff argued under § 1983 that his due process rights were violated when the defendant failed to explain the reason for his dismissal and to offer him an opportunity to defend his teaching abilities.

The *Roth* Court concluded that no constitutionally protected interest was raised under the facts of that case, explaining that the plaintiff was not entitled to notice and an opportunity to be heard, because under the terms of his contract with the defendant, Roth was employed at the will of the Board of Regents. *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707. The Court qualified this holding, however, by suggesting that its constitutional analysis would have been different if: (1) the plaintiff's "good name, reputation, honor, or integrity" was threatened because of the reasons offered by the defendants to explain his dismissal; or (2) where the defendant's "decision in declining to reemploy the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Roth, supra,* at 573–74, 92 S.Ct. at 2707.

The Supreme Court reaffirmed and extended the *Roth* decision in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In *Bishop,* the plaintiff had been employed as a police officer by the defendant City of Marion, North Carolina, until he was discharged on grounds of "insubordination, causing low morale, and conduct unsuited to an officer." *Id.* at 344, 96 S.Ct. at 2077. Bishop thereupon sued the City, charging that his liberty and property rights in continued municipal employment were violated when City officials discharged him without a hearing and opportunity to defend his record. Bishop further alleged, and the Court weighed this allegation when considering his claim, that the City's explanation for his discharge was false. *Id.* at 348–49, 96 S.Ct. at 2079.

Upon considering the arguments of the parties, and conceding that Bishop was classified as a permanent employee under the Marion City Ordinance, the Court nonetheless concluded that the plaintiff was not entitled to due process protection under § 1983:

> "The federal court is not the appropriate forum in which to review the multi-

**6.** *Webster v. Redmond,* 599 F.2d 793, 796 (7th Cir. 1979).

tude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." 426 U.S. at 349–50, 96 S.Ct. at 2079–80.

The *Roth* and *Bishop* precedents, together with the many federal cases that have followed these decisions,[7] suggest that the Court should not casually find liberty or property interests at stake when aggrieved plaintiffs sue under § 1983 and allege irregularities in municipal hiring practices. One persistent theme that runs through these decisions, however, is that the courts will in fact recognize a liberty or property interest protectable under § 1983 if the state or municipality has affirmatively adopted regulations which confer such a right. *See Bishop v. Wood*, 426 U.S. 341, 345–46, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976); *Confederation of Police v. City of Chicago*, 547 F.2d 375, 377 (7th Cir. 1977) ("[t]he existence of a property interest in public employment cognizable under the due process clause depends on whether state law has affirmatively created an expectation that a particular employment relationship will continue unless certain defined events occur." *Id.*).

In *Aiello v. City of Wilmington, Delaware*, 426 F.Supp. 1272 (D.Del.1976), the Court was asked to consider whether a liberty or property interest had been created by the defendant municipality in favor of the plaintiff, who had been suspended, without explanation or an opportunity to be heard, from his position as a firefighter in the City of Wilmington. The Court prefaced its discussion of the case by noting that "the ultimate arbiter of the sufficiency of the [plaintiff's] claim of entitlement to a liberty or property interest ... is state law," *id.* at 1286, and, upon reviewing the defendant's personnel regulations, the Court concluded that the plaintiff was a permanent employee who could not be discharged, under municipal regulations, except upon a showing of good cause." *Id.* The *Aiello* Court further found that the defendant municipality, by adopting specific regulations to protect its employees from arbitrary discharge, had in effect created a property right in favor of its employees and, by failing to follow proper procedures when suspending the plaintiff, the defendant had violated Aiello's due process rights. *Id.* at 1287.

The plaintiff Levine argues here that the Town of West Hartford similarly created a liberty or property interest in favor of applicants for municipal employment when it adopted the conflict of interest regulations. He maintains that by virtue of this conflict rule each applicant for municipal employment enjoys a due process right to be considered by an impartial, disinterested decision-making authority and when the Town failed to follow these procedures prior to acting upon his application, it violated his due process rights.

Several recent decisions do in fact support the plaintiff's claims that when a governmental body adopts procedures relating to such interests as employment and housing, it is obliged under federal law to comply with these procedures. *See Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957): *United States v. Heffner*, 420 F.2d 809, 811 (4th Cir. 1970); *Otero v. New York City Housing Authority*, 344 F.Supp. 737, 745 (S.D.N.Y.1972).

In *Otero v. New York City Housing Authority, supra*, the plaintiff class included a group of blacks and hispanics who were

---

**7.** *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Wisconsin v. Constanti-* neau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

displaced from their public housing units to enable the defendant to refurbish these apartments. Under the defendant's municipal housing regulations, "displaced" persons were entitled to first priority when the rehabilitated public housing units were again ready for occupancy. *Id.* at 740. The plaintiffs commenced suit against the defendant after learning that the Housing Authority had not followed these regulations when deciding among prospective applicants for rehabilitated public housing units. They alleged that the defendant's failure to comply with explicit municipal regulations governing the allocation of public housing units violated their due process right to be considered for such housing consistent with the procedures adopted by the municipal authority.

Upon considering the serious constitutional question raised by the plaintiffs, the *Otero* Court concluded that the members of the plaintiff class were entitled to due process protections under 42 U.S.C. § 1983:

> "The short of this subject is that the Housing Authority, in dishonoring its own regulations and denying first priority to plaintiffs and others in their class, has denied them the due process of law." *Id.* at 745.

*See Balf Co., Inc. v. Gaitor,* 534 F.Supp. 600 (D.Conn.1982).

In this dispute, the conflict of interest regulation adopted by the defendant Town of West Hartford is quite explicit:

> "13.4.4 *Conflict of Interest.* No officer, official or employee shall engage in any business or transaction or shall have a private financial interest or personal interest, direct or indirect, which is incompatible or in conflict with the proper discharge of his official duties in the public interest or would tend to impair his independence or judgment or action in the performance of his official duties." West Hartford Personnel Rules: A Code of

Ethics for Town Officers, Officials and Employees (1959).

Several additional provisions in the Town Charter and Department of Personnel Rules reaffirm the strong municipal policy in West Hartford to encourage impartial and disinterested decision-making, *see, e.g.,* § 13.4.9 (requiring official disclosure of private financial interests in any contemplated Town contract); Chapter XIV, § 1 of Town Charter (requiring Town Council members, officers and employees of the Town to abstain from deciding matters in which they have a financial interest).

The Director of Personnel in West Hartford specifically promulgated these employment regulations, and the Town Council adopted such rules pursuant to Chapter VIII, § 2[8] of its Charter. Given the specific statutory language, and formal Town Council approval of these personnel provisions, the Court concludes that the defendant has created a due process right, in favor of prospective applicants for municipal employment, to be considered by an impartial appointing authority when openings occur within the Town workforce. Indeed, § 1983 specifically provides that "every person who, under color of any . . . *ordinance* [or] *regulation* . . . subjects any citizen . . . to the deprivation of *rights* [or] *privileges* secured by the Constitution and laws, *shall be liable . . . .*" 42 U.S.C. § 1983 (emphasis added). The Town of West Hartford conflicts provision is an "ordinance" or "regulation" within the meaning of § 1983 and it was formally adopted by the defendant. Thus, any rights that are conferred under this regulation, including the right to be considered for municipal employment by an impartial appointing authority, necessarily must be guaranteed and safeguarded by § 1983.

▉ The plaintiff has alleged, with the specificity required to survive a motion to

---

**8.** This provision requires that formal Town Council approval is necessary before any resolution promulgated by the Director of Personnel is adopted into law:

> "Said personnel rules shall govern in all agencies, boards, commissions, departments

or offices of the town except those specifically exempted by this charter. Such rules and any amendments thereto shall become effective upon being adopted by resolution of the council and filed with the town clerk."

dismiss under Fed.R.Civ.P. 8(a), that the defendants Moylan and Reynolds participated extensively in the process of choosing five police officers even though the sons of these men had applied for such positions. As the number three ranked applicant who was unsuccessful in his efforts to be appointed to one of the five police officer's positions at issue here, Levine has alleged sufficient injury to entitle him to sue under § 1983. Accordingly, the defendants' motion to dismiss Count One of the Complaint is denied. The Court will, however, grant the defendants' motion to dismiss Count Two of the Complaint, which alleges damage to reputation, because this count raises nothing more than a claim for defamation under the tort law which should be resolved by the Connecticut state courts. *Paul v. Davis, supra,* 424 U.S. at 698, 96 S.Ct. at 1159; *Reilly v. Leonard,* 459 F.Supp. 291, 302 (D.Conn.1978). The plaintiff remains free to argue at trial, however, that the injury which he allegedly suffered as a result of the defendants' conduct should be considered as a factor in assessing damages under § 1983.

SO ORDERED.