Steven R. APPLETREE

v.

CITY OF HARTFORD, et al.

Civ. No. H–81–992.

United States District Court,
D. Connecticut.

Jan. 13, 1983.

RULING ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND PLAINTIFF'S MOTION TO DISMISS DEFENDANT CASATI'S COUNTERCLAIM

BLUMENFELD, Senior District Judge.

Plaintiff in this action seeks money damages and injunctive relief in two counts. Count One alleges that the defendants deprived him of rights under the Constitution and laws of the United States and the State of Connecticut during a course of events involving the procedure by which the Hartford Police Department deals with civilian complaints. Count Two alleges that the defendant Casati committed unconstitutional and tortious acts by procuring plaintiff's arrest on a false charge of interfering with a police officer. On both counts the jurisdiction of the court is invoked under 28 U.S.C. §§ 1331 and 1343(3), pursuant to the claims under the United States Constitution, and under the pendent jurisdiction of this court with respect to the state causes of action sounding in tort.

The defendants have moved to dismiss the complaint for failure to state a claim. In addition, defendant Casati has filed a counterclaim in which he alleges that plaintiff libeled and slandered him. Plaintiff has moved to dismiss the counterclaim on the ground that this court lacks jurisdiction to hear it.

*Facts*

The facts in this case are straightforward. For the purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) the allegations contained in the complaint must be taken as true and the facts viewed in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

On December 28, 1979, defendant Casati, a Hartford police officer, applied to the Connecticut Superior Court for a warrant to arrest the plaintiff on, among other things, charges of interfering with a police officer on December 21, 1979. Casati was the officer involved in the December 21

John R. Williams, Williams & Wise, New Haven, Conn., for plaintiff.

Frederick W. Danforth, Jr., and P. Bryden Manning, Hartford, Conn., Dennis L. Pieragostini, Asst. Corp. Counsel, Hartford, Conn., Albert J. McGrail, and Stephen F. McEleney, Hartford, Conn., for defendants.

incident. In the second count of his complaint, plaintiff alleges that the application submitted by Casati in order to obtain the arrest warrant contained material false allegations and intentional material omissions, without which probable cause would not have existed. The warrant was issued and plaintiff was arrested pursuant to it on January 4, 1980. This is the allegedly false arrest referred to in the second count of plaintiff's complaint. The charge of interfering with a police officer was dismissed by a judge of the Connecticut Superior Court on or about February 15, 1980.

On June 4, 1980, plaintiff filed a written complaint against defendant Casati with the Internal Affairs Division of the Hartford Police Department. This complaint involved the December 21 incident. On July 1, 1980, allegedly pursuant to an established policy of discouraging citizen complaints against police officers, defendant Glowacki met with plaintiff and informed him that no complaint against a Hartford police officer would be entertained unless filed subject to criminal penalties for making false statements. Defendant Glowacki obtained plaintiff's signature on a document stating:

I fully understand that if I make a statement that is untrue and which is intended to mislead a law enforcement officer in the performance of his official function, I will be in violation of Section 53a–157, Connecticut General Statutes.

Section 53a–157 of the Connecticut General Statutes reads:

A person is guilty of false statement when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function.

On or about October 1, 1980, defendant Glowacki obtained a warrant for the arrest of the plaintiff on a charge of making a false statement in violation of Section 53a–157 of the Connecticut General Statutes. (This is the arrest complained of in the first count of plaintiff's complaint.) On June 18, 1981, this charge was dismissed by a judge of the Connecticut Superior Court.

### Discussion

#### I. Defendant's Motion to Dismiss Plaintiff's Complaint

##### A. Count One

The first inquiry in any section 1983 suit is whether the plaintiff has been deprived of a right "secured by the Constitution and laws." *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Federal courts require in section 1983 actions that the plaintiff allege, "with factual and legal specificity, the 'civil rights or constitutional guarantee safeguarding the interest he asserts has been invaded.'" *Levine v. Town of West Hartford Police Dept.,* 541 F.Supp. 741, 743 (D.Conn.1982) (quoting *Paul v. Davis,* 424 U.S. 693, 700, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976)). "Complaints relying upon 42 U.S.C. § 1981 *et seq.* are plainly insufficient unless they contain at least some allegations of facts indicating a deprivation of civil rights." *Fine v. City of New York,* 529 F.2d 70, 73 (2d Cir.1975); *see also, Powell v. Jarvis,* 2nd Cir., 460 F.2d 551 (1972).

Plaintiff has failed in his complaint to allege any facts establishing a deprivation of his civil rights by defendants. Plaintiff, who was arrested pursuant to a warrant, does not allege anywhere in his complaint that his arrest under Section 53a–157 was without probable cause. The court cannot construe as true allegations that are not contained in the complaint.[1] Rather surprisingly, plaintiff's lawyer states in his briefs that plaintiff alleges

---

1. On a 12(b)(6) motion, the district court is only allowed to consider facts alleged in the complaint. *Biesenbach v. Guenther,* 588 F.2d 400, 402 (3d Cir.1978); *Murray v. Amoco Oil Co.,* 539 F.2d 1385, 1387 (5th Cir.1976). *Cf.*

*Bryson v. United States,* 463 F.Supp. 908 (E.D. Pa.1978) (court may, in its discretion, assume truth of allegation contained in brief but not in complaint).

arrest without probable cause and for the purpose of punishing protected first amendment rights. The complaint, however, only states that the charges were dismissed by the state court. In false arrest cases the innocence of the defendant is irrelevant. "The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan,* 443 U.S. at 145, 99 S.Ct. at 2694.

Plaintiff alleges that the defendants have adopted and implemented an official municipal policy of seeking to chill the exercise by citizens of protected first amendment rights. This policy is said to consist of threatening with arrest, and occasionally arresting, on charges of making false statements, citizens who file complaints with the Hartford Police Department concerning misconduct by police officers. Plaintiff alleges that his arrest was the result of this policy and was obtained by the defendants for the specific purpose of punishing him for exercising rights guaranteed to him under the first and fourteenth amendments to the United States Constitution. Furthermore, plaintiff alleges that his arrest was designed to discourage him and other citizens from exercising such rights in the future. Plaintiff, however, has not alleged that his arrest was without probable cause, or the existence of any other instances when arrests of other individuals were made or threatened to be made without probable cause. For this reason it cannot be assumed for the purpose of this motion that the police department is implementing its civilian complaint policy in this clearly impermissible way.

The issue remains, however, whether it is first amendment violation for a police department to require written allegations of misconduct against a police officer to be made under oath and subject to criminal sanction if intentionally false and intended to mislead a law enforcement officer in performing his duties. On this issue the court must agree with defendant. Assuming that a police misconduct complaint is protected first amendment speech, Section 53a–157 satisfies the constitutional requirement of *Garrison v. Louisiana,* 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964) and *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). "[T]he knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection." 379 U.S. at 75, 85 S.Ct. at 216. Section 53a–157 only punishes intentionally false statements. If the state can punish intentionally false statements, it cannot be impermissible to require signing the statements under oath. This procedure assures that the potential defendant is aware of the penalties when making the statement. On the facts alleged in this complaint, defendant Glowacki's advice to the plaintiff that he must sign the document was not an impermissible threat to plaintiff's first amendment rights, applicable to the states by the fourteenth amendment.

Plaintiff seeks injunctive relief for himself and for the class of people whose rights are allegedly being violated by the police department's civilian complaint policy. Since, for the reasons stated above, plaintiff has not stated a claim under section 1983, this relief is denied. There is, therefore, no representative party and this court is not required to decide whether a Rule 23 class action is appropriate in this case. Similarly, the court declines to exercise its pendent jurisdiction to consider plaintiff's state claims. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

I feel compelled to point out additional deficiencies in plaintiff's pleading in count one. The claims against the City of Hartford, Police Chief Sicaris, and officer Casati rest only on conclusory references to the plaintiff's arrest as the result of a policy on the part of the City of Hartford to chill and impede protected first amendment rights with respect to complaints against the Hartford police. The only reference in the complaint to Sicaris and Casati is that said policy was "promulgated" by the former and "implemented" by the latter. Even if plaintiff amends his complaint to make it clear that his arrest by Glowacki was with-

out probable cause, these solely conclusory allegations as to the other defendants would be insufficient. There are no allegations of fact linking them to the arrest.

██ As to the City of Hartford, it is clear that a municipality may be held liable as a "person" under section 1983. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). That case established also that liability must be based on something more than a theory of respondeat superior. *Id.* at 691, 98 S.Ct. at 2036. In a leading opinion by then District Judge Newman, *Smith v. Ambrogio,* 456 F.Supp. 1130 (D.Conn.1978), the court set down guidelines for determining municipal liability under section 1983. A complaint devoid of facts involving the town in the alleged injury is not sufficient.

> The standard for municipal liability predicated on inaction of senior personnel must be frankly acknowledged as difficult to meet. A claim of this sort should not be initiated unless there is a sufficient factual basis to justify the extensive litigation that such a claim entails. The typical § 1983 suit against a police officer for his allegedly unconstitutional action generally involves a single episode. Discovery and trial are entirely manageable. But a claim of municipal liability based on an alleged policy reflected by a pattern of prior episodes will inevitably risk placing an entire police department on trial. Sweeping discovery will be sought to unearth episodes in which allegedly similar unconstitutional actions have been taken, and the trial will then require litigation of every episode occurring in the community that counsel believes can be shown to involve a similar constitutional violation. Even if a trial of that scope is warranted by a complaint that does allege overt acts with requisite particularity, [citation omitted] neither a federal court nor a municipality should be burdened with such an action unless a detailed pleading is presented.

*Id.* at 1137. *E.g., Schramm v. Krischell,* 84 F.R.D. 294 (D.Conn.1979). A complaint against a municipality must fail if it "appears to have merely attached a conclusory allegation of 'policy' to what is in essence a claim based on a single unconstitutional act." *Giarrusso v. City of Chicago,* 539 F.Supp. 690, 693 (N.D.Ill.1982) (also involving allegations of a policy of failure to supervise). The plaintiff in this case points to no facts outside his own case to support any of his allegations.

This case does not involve a policy reflected by inaction or a failure to supervise, but an unarticulated policy to threaten and arrest without probable cause those who complain about police misconduct. An unarticulated, unwritten policy is the equivalent to a custom of passive acquiescence in unconstitutional conduct. Under this circumstance, a pattern or series of acts is needed. *Rivera v. Farrell,* 538 F.Supp. 291, 297 n. 10 (N.D.Ill.1982). Plaintiff does not specifically allege the existence of any similar arrests without probable cause involving complaints about the police. The complaint sets forth no facts beyond defendant Glowacki requiring plaintiff to sign, informing him of the statute, and subsequently arresting him under that statute. In order to properly involve the City of Hartford as a defendant there must be some facts indicating the particular manner in which it has adopted an impermissible policy of threatening and falsely arresting citizens who complain of police misconduct.

As to Sicaris and Casati, plaintiff has alleged that they implemented and promulgated the policy and acted in conspiracy with Glowacki to violate plaintiff's rights. Here again the cause of action is "more complex than a claim of injury directly inflicted by the immediate actor, such as a police officer or prison guard." *Smith v. Ambrogio,* 456 F.Supp. at 1137. So particularized fact pleading, beyond the notice pleading required by *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), is again necessary.

#### B. *Count Two*

██ The court must disagree with the defendants that more specificity in pleading

is required in plaintiff's second count. Count Two alleges that defendant Casati "knowingly and maliciously procured the arrest of the plaintiff on the false charge of interfering with a police officer." In support of this claim plaintiff alleges that on December 28, 1979, Casati applied to Connecticut Superior Court for a warrant to arrest him on a charge of, among other things, interfering with a police officer on December 21, 1979. This application is alleged to have contained material false allegations and intentional material omissions, without which probable cause would not have been established.

Plaintiff alleges in sufficient detail when, where, and how his arrest was wrongfully procured by defendant Casati. Here plaintiff gives notice of a specific incident, not merely a conclusion that his rights have been violated. Any greater level of factual detail can be discovered by defendants before trial. The only case cited by the defendants to support their argument for greater specificity is *Powell v. Jarvis,* 460 F.2d 551 (2d Cir.1972). In that case plaintiff merely alleged that one of the defendants had signed a "false affidavit" without specifying the nature of the affidavit, when it was signed, or why it was false. None of these details are lacking in this case.

II. *Plaintiff's Motion to Dismiss Defendant Casati's Counterclaim*

On June 2, 1982, defendant Casati filed a counterclaim in which he alleges in separate counts that the plaintiff Appletree libeled and slandered him. Plaintiff has moved to dismiss the counterclaim on the ground that this court lacks jurisdiction over it. The counterclaim is based on state law and no diversity of citizenship exists between the parties since all are citizens of Connecticut. Defendant Casati asserts that the court has ancillary jurisdiction over the subject matter of the counterclaim because it is compulsory in nature within the meaning of Fed.R.Civ.P. 13(a).

"Ancillary jurisdiction is a concept which, *inter alia,* allows a federal court to adjudicate a compulsory counterclaim that does not independently meet the requirements for invocation of its jurisdiction." *Crouse-Hinds Co. v. InterNorth, Inc.,* 634 F.2d 690, 699 (2d Cir.1980). The critical issue, according to the language of Rule 13(a), in differentiating permissive from compulsory counterclaims is whether the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." The Second Circuit, relying on the Supreme Court's interpretation of Rule 13's predecessor,[2] has looked to the "logical relationship" between the claim and the counterclaim to determine whether they arise out of the same transaction or occurrence. *Harris v. Steinem,* 571 F.2d 119, 123 (2d Cir.1978). *See, e.g., United States v. Heyward-Robinson Co.,* 430 F.2d 1077, 1081 (2d Cir.1970). "This flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit [citations omitted]. Thus, precise identity of issues and evidence between claim and counterclaim is not required." 571 F.2d at 123.

With this test in mind and realizing that Rule 13 should be generously construed, *see, e.g., Columbia Plaza Corp. v. Security National Bank,* 525 F.2d 620, 625 (D.C.Cir. 1975), I turn to the facts in the instant case. In the second count of his complaint, plaintiff Appletree alleges false arrest by defendant Casati on January 4, 1980 for an incident that allegedly occurred on December 21, 1979. Defendant Casati alleges in his counterclaim that the statements plaintiff has made in relation to the December 21, 1979 incident are defamatory in nature. The truth of defendant Casati's version of the events on December 21, 1979 is thus an essential issue of fact in both the claim and the counterclaim. The similarity of facts in

---

**2.** *See Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926); *see also Baker v. Gold Seal Li-* *quors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974).

dispute when a counterclaim is based on a libelous publication contemporaneous with the transaction complained of in the original dispute is sufficient to meet the "logical relationship" test.[3] *See Albright v. Gates,* 362 F.2d 928 (9th Cir.1966); *Sun Shipbuilding & Dry Dock v. Virginia Electric & Power Co.,* 69 F.R.D. 395 (E.D.Pa.1975); *Independent Tube Corp. v. Copperweld Corp.,* 74 F.R.D. 462, 464–66 (N.D.Ill.1977); *Fox Chemical Co. v. Amsoil, Inc.,* 445 F.Supp. 1355, 1361 (D.Minn.1978).

Given the finding that the counterclaim is compulsory in nature, the court need not decide whether it would be justified in extending its ancillary jurisdiction to a permissive counterclaim under these circumstances. *See United States v. Heyward-Robinson Co.,* 430 F.2d at 1088–89 (Friendly, J. concurring).

### III. Conclusion

The first count of the complaint, in which plaintiff alleges that the defendants deprived him of rights under the Constitution and laws of the United States and the State of Connecticut, is dismissed for failure to state a claim upon which relief can be granted. The motion to dismiss is denied, however, as to the second count of the complaint, in which plaintiff alleges false arrest by defendant Casati.

Given this court's finding that defendant Casati's counterclaim is compulsory in nature, the motion to dismiss it on the ground that this court lacks jurisdiction is denied.

SO ORDERED.

---

**3.** This situation can easily be distinguished from the line of cases holding that a counterclaim which stems from the filing of the main action and subsequent defamation is not compulsory in nature. *See Harris v. Steinem,* 571 F.2d 119, 124 n. 16 (2d Cir.1978).